JOHN IRWIN, Individually and as Representative of All Other Members of Local Union No. 125 Similarly Situated, Plaintiff, v. JOHN POSSEHL, Individually and as General President of the International Union of Operating Engineers, an Unincorporated Association of More than Seven Members, and Others, Defendants.

Supreme Court, Bronx County, December 20, 1932.

*Owen S. M. Tierney,* for the plaintiff.

*O'Brien, Boardman, Conboy, Memhard & Early* [*Martin Conboy* and *David Asch* of counsel], for defendant John Possehl, etc.

*James E. Smith,* for other defendants.

HAMMER, J.   The defendant Possehl, individually and as general president of the International Union of Operating Engineers, was served with the summons and complaint in this action and with the order to show cause and papers upon this motion.   Service upon the president as such is service upon the union.   (General Assns. Law, §§ 12, 13, as amd.; *Bruce Lodge, Inc.,* v. *Sub-Committee of Management,* 208 App. Div. 100.)

The judgment in the action of *Irwin* v. *Possehl* (143 Misc. 855), entered July 5, 1932, determined that certain acts of the defendants, supervisor, officers and agents of Local Union 125, were illegal in that they were in violation of indicated provisions of the constitution, general laws and rules of the International Union of Operating Engineers.   Reference is made in the affidavit of the general president, verified October 13, 1932, in the opposing papers herein, to a letter transmitted to me.   It is desirable to take notice thereof because of the statement therein " that the plaintiffs in that case made no effort whatsoever to vary from the position indicated in the foregoing letter, to wit, a flat rejection of the proposal for a general settlement of the then existing difficulties,"— and that the facts be stated.   The fact is that plaintiffs through their counsel tentatively agreed with counsel of record for the defendants to an amicable adjustment of the two cases pending, *i. e., Rodier* v. *Huddell* (232 App. Div. 531) and *Irwin* v. *Possehl* (*supra*).   Counsel in the two cases referred to on May twenty-sixth informed the court that all matters were to be settled upon the basis of some twelve points.   These included all those stated in said letter to be at issue. Defendant's counsel stated that it was expected that the proposed settlement would be approved by the general officers of the international union over Decoration Day at Boston at memorial exercises there for the late General President Huddell, and the court would be advised of the details by June first.

On that or the day previous defendant's counsel stated the proposed settlement was not approved and his clients desired a decision.   The decision was handed down June second and published June third.   As the supervisor was the representative and *alter ego* of the general president, performing duties of the latter " which time and distance prevented him from performing personally," the opinion pointed out that many of such illegal

acts were in effect those of the general president and the parent union. Such president, the parent union, and its other officers were not parties to the action of *Irwin* v. *Possehl*, but the general president and a general vice-president were witnesses. The affidavit of the general president also states: " For some time prior to June 3, 1932, the members of the Executive Committee had given consideration *unofficially* to the possible necessity of revoking the charter of Local Union No. 125, and, on June 3, 1932, the Executive Committee had a regular session thereof, and heard the Local Union, through its then supervisor, who had not at that time been enjoined from acting as such. The said supervisor reported fully as to the conditions then existing at such Local Union and the General Executive Board thereupon duly voted to revoke the charter of Local Union No. 125. No demand for any other or further hearing was made as provided in Article IV, Section 2 of the Constitution."

It is again necessary to note that in *Rodier* v. *Huddell* (232 App. Div. 531), one of the actions referred to above, it was said: " In any case an appeal within the organization would have been a vain thing. The only appeal provided is to the general executive board of the International. This board consists of seven members, of which the defendant Huddell [the late general president] was the head and in general control." (Words in brackets are mine.) Possehl was one of such general executive board and he has succeeded Huddell as general president. Substituting the former for the latter, the statement is equally applicable here.

It appears then that while the court had the cause under consideration, and counsel in the case at their request were in almost daily consultation with the justice presiding in what was understood to be conferences for an amicable adjustment, the officers of the parent body were in conference with the defendant supervisor about the very matters of the local union being considered by the court. In addition, the day after the decision of the court was handed down, and on June 3, 1932, the very day it was published, after hearing " the Local Union, through its then supervisor, who had not at that time been enjoined," they " revoked " the charter of the local union. Under the decision and judgment the alleged acts of the plaintiff members of Local No. 125, which are the asserted basis of the revocation of charter, were held to have no existence. The very acts of the defendant supervisor and officers, which were held to be illegal in the decision and judgment, are by implication of the act of revocation condoned, approved and ratified. No other facts were presented to or found by the court. Factually, then, the international union's sanction of such acts must be the basis of the executive committee's purported revocation. The com-

plimentary statement of high regard toward the justice presiding does not alter nor lessen the force of the act of revocation which was directly contrary to the purpose and result which the opinon indicated would be and later were expressed in the decision and judgment. The judgment, of course, was not binding upon the officers of the parent body. It is clear, however, that with knowledge of the court's consideration of the very facts upon which they must have based their order of revocation they staked the wisdom of their own contrary conclusion against the mature deliberation and disinterested judgment of the court. They cannot now be heard to raise any objection to the determination in advance of trial in the instant action of the issues in respect of the local union upon facts heard upon the previous trial and there adversely determined. Upon decided fact they have come to a different conclusion. Possibly, other or different evidence may be adduced at the trial in this litigation to which they are parties and they may prevail. Until such possible determination this court is not only warranted but bound to accept the decision reached and expressed in its judgment of July 5, 1932, as decisive of the same issues which, with the exception that the international union and the general officers are parties, are again presented here.

The action of the general president, executive board and the supervisor, in so far as revocation of the charter of Local Union No. 125 was sought to be effected, must also be held to have had for its purpose not only the circumvention and nullification of the decision of the court and the judgment to be entered thereon, but also the accomplishment of those illegal acts, unwarranted injuries and oppressions to the plaintiff members of Local Union No. 125, for the alleviation and correction of which the two actions referred to were brought. The revocation, according to defendant's affidavit, was based upon the following: " The said supervisor reported fully as to the conditions then [June 3, 1932] existing at such Local Union." It must be assumed that this full report of conditions included a statement of the negotiations had for settlement and that counsel for the supervisor and the other defendant officers had stated to the court that settlement of all the issues was likely and only awaited approval by the international officers. Full report on June third would not omit mention that the survivor's counsel had requested the representatives of the international union to approve the settlement and approval having been rejected, counsel on May thirty-first or June first had requested the court to render its decision. Full report assuredly should have brought to the attention of the international officers that the court's opinion was handed down on June second and published June third. Even assuming

that the report did not take notice that the court's opinion was given and published, certainly it may reasonably be assumed that speculation as to the decision of the court made up no small nor unimportant part of the supervisor's full report and the subject-matter of the committee's deliberations. Faced with the facts, no other conclusion is logical. If it can be said that the international officers acted legally, it is not important in the consideration or this motion for injunction that " revocation " seems to have been directed at nullification of the determination of this court expressed in its opinion or otherwise anticipated. The matters of paramount consideration are: (1) This court by its judgment has determined, and it must continue to hold until and unless otherwise found upon the trial of this action, that the pretended facts asserted against the plaintiff are non-existent, and the charges of the plaintiffs against the defendants are established facts; (2) that being so, without any foundation of fact or legitimate justification, by the act of attempted revocation the defendant international union through the general president and executive board and the connivance of the supervisor conspired at continuance of all of the very same illegal acts, unwarranted injuries and oppressions against the plaintiff members which the court had under consideration for decision, and (3) the act of pretended revocation, and the further acts done pursuant thereto against the members of Local Union No. 125, have caused and are causing irreparable injury to them.

It must then be held that such revocation is a nullity and all such other acts illegal. Plaintiffs, therefore, are entitled to injunctive relief. Accordingly, during the pendency of this action the defendant International Union of Operating Engineers, and Possehl, as its president and individually, and its officers, agents, servants, representatives, employees and its general executive committee or board, will be restrained, with the exception of taking an appeal from the order herein, from directly or indirectly doing any further act, or continuing any act heretofore done, whether physically or by written or printed document, spoken word or other means of communication, to effectuate the asserted revocation of Local Union No. 125, or to report, inform, advise, publish or make known to contractors or associations of employees, contractors, or building trades employers associations, building trades, labor unions, and any and all kindred persons, and organizations, the asserted revocation of the charter of Local Union No. 125 and/or that the officers elected therefor under judgment of this court are not the officers thereof in good standing and entitled to recognition as such, and/or that the members who have paid their current dues and hold cards from plaintiff as financial secretary of Local

Union No. 125 are not members in good standing of said local union and of the International Union of Operating Engineers and/or entitled to all the rights, privileges and benefits of and as such good standing members. Pending the trial the acceptance by the defendant international union, or its general treasurer, of the *per capita* tax will be without prejudice to final determination herein. In the event of non-acceptance of such *per capita* tax tendered by plaintiff or by Local Union No. 125, the same will be deposited in a special account entitled "Per Capita Tax Fund" in a bank or trust company stipulated to by the parties, or upon disagreement, designated by the court, to be withdrawn only by checks signed by the plaintiff's financial secretary and such other person stipulated by the parties, or, upon disagreement, designated by the court, upon the settlement of the order herein. Bond under section 893 of the Civil Practice Act fixed at $1,000. Settle order.